UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBORAH CHRISTENSEN | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:17-CV-03183-M |
| | § | |
| | § | |
| GAINES INVESTMENT TRUST, | § | JURY TRIAL DEMANDED |
| AMERICA'S BACK OFFICE, INC. – U.S., | § | |
| JEFFREY GAINES, and CARMEN SUGGS, | § | |
|     Defendants. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW, Deborah Christensen, formerly known as Deborah Cooper ("Plaintiff"), complaining of GAINES INVESTMENT TRUST, AMERICA'S BACK OFFICE, INC. – U.S., JEFFREY GAINES, and CARMEN SUGGS (collectively, "Defendants"), and in support thereof respectfully alleges as follows:

## I.       INTRODUCTION

1.       Plaintiff brings this action against Defendants, her former employers, for their actions prohibited under the Family and Medical Leave Act of 1993, 29 U.S.C. §§2601-2654 ("FMLA" or "the Act") and the Fair Labor Standards Act, 29 U.S.C. §§201, *et seq.* ("FLSA").

2.       A codified purpose of the FMLA is to entitle employees to take reasonable leave for medical reasons. *See* 29 U.S.C. §2601(b)(2). Section 104 of the Act secures restoration of the employee to the same or equivalent position with equivalent pay and other terms and conditions of employment upon return from protected medical leave, and Section 105 prohibits employers from interfering with, restraining, or denying the exercise of or the attempt to exercise any right

provided under the FMLA.  One of the purposes of the FLSA is to ensure that employers pay employees overtime compensation.

3.      By repeatedly instructing Plaintiff to delay her physician-recommended surgery, announcing their intention to demote Plaintiff to a lesser position three days prior to Plaintiff's requested time off for medical leave, and terminating Plaintiff two days prior to inception of Plaintiff's requested time off for medical leave, Defendants interfered with and restrained Plaintiff's exercise of her protected right to qualified leave, in violation of the FMLA. Plaintiff routinely worked in excess of forty (40) hours a week for Gaines Investment Trust, but was not paid overtime by Defendants. Defendants' management – specifically, Plaintiff's supervisor, Carmen Suggs – was aware that Plaintiff routinely worked in excess of forty (40) hour per week, yet Defendants refused to pay overtime compensation to Plaintiff.  Defendants' actions in failing to pay Plaintiff overtime wages were in willful violation of the FLSA.

## II.      PARTIES

4.      Plaintiff is an individual resident of Lucas, Texas.

5.      Defendant Gaines Investment Trust is a California entity with its headquarters located at 7590 Fay Avenue, Suite 100, La Jolla, CA 92037.  Defendant owns and manages multiple commercial apartment properties in states including Texas, Oklahoma, Arizona, Nevada and California in addition to various other types of real estate in markets around the country.

6.      Defendant Jeffrey Gaines is the Managing Director of Gaines Investment Trust. He is an individual resident of California and may be served at the company headquarters, located at 7590 Fay Avenue, Suite 100, La Jolla, CA 92037, or wherever he may be found.

7.      Defendant Carmen Suggs is the Vice President of Operations, responsible for the management of all asset operations, training and performance of Gaines Investment Trust.  She is

an individual resident of Arizona and may be served via the company headquarters, located at 7590 Fay Avenue, Suite 100, La Jolla, CA 92037, or wherever she may be found.

8.      Defendant America's Back Office, Inc. – U.S. is a Michigan entity which may be served via its registered agent C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201. It offers human resources services to companies within the United States, including Gaines Investment Trust, and participated in the oversight, management, compensation distribution, and eventual termination of Plaintiff's employment at Gaines Investment Trust.

### III.      JURISDICTION & VENUE

9.      This Court has jurisdiction over this action under 28 U.S.C. §1331 as this action involves enforcement and interpretation of federal statutes, specifically the Family and Medical Leave Act of 1993, 29 U.S.C. §§2601-2654 and the Fair Labor Standards Act, 29 U.S.C. §§201, *et seq*.

10.     Venue is proper pursuant under 28 U.S.C. §1391(b)(2) because all or a substantial part of the events or omissions giving rise to the claim in this lawsuit occurred within the geographic confines of the Northern District of Texas, including Dallas, Texas.

### IV.      FACTUAL BACKGROUND

11.     Plaintiff, an employee of Defendant Gaines Investment Trust ("Defendant Gaines") for approximately four years, held the position of Senior Regional Manager for Defendant Gaines, overseeing eight of Defendant Gaines' properties located in Dallas, Texas, Las Vegas, Nevada, and Tulsa, Oklahoma.  Plaintiff worked for Defendant Gaines as a full-time, salaried employee. During her employment, Plaintiff worked directly under Carmen Suggs, who controlled her work schedule and conditions of employment.  Ms. Suggs helped determine Plaintiff's rate and method of payment, maintained employment records concerning Plaintiff's

performance, and possessed the power to hire and fire employees, including Plaintiff. America's Back Office, Inc. also served in an employer capacity during Plaintiff's employment. America's Back Office, Inc. maintained Plaintiff's employment and pay records, issued her paychecks, and assisted Defendant Gaines with its human resources decisions, including termination decisions. Defendant Gaines was led by its owner, Jeff Gaines. Based upon what Plaintiff observed and experienced during her employment, Mr. Gaines was directly involved in hiring, firing, and pay decisions. Mr. Gaines held control over the working conditions of his employees, including Plaintiff, and was involved in decisions to terminate employees based upon their medical or pregnancy conditions.

12.     During her four years working for Defendant Gaines, Plaintiff received positive feedback from her supervisor, Carmen Suggs, and was given a promotion in March 2015. In January 2015, Plaintiff experienced shooting pains in her shoulder which were severe enough to prompt Plaintiff to visit a minor emergency center for medical assistance. Plaintiff informed her direct supervisor, Carmen Suggs ("Ms. Suggs"), of the physical ailment and medical visit. On July 9, 2015, after months of chronic pain, Plaintiff was informed by her treating physician that she required a surgical procedure on her shoulder to repair a torn labrum and torn bicep tendon in her right shoulder. Plaintiff advised Ms. Suggs of the physician's recommendation and Plaintiff's subsequent need for accommodations at work after the procedure due to her disability, including restriction from lifting objects during the recovery period, limited duty confined primarily to a desk, and no travel. Plaintiff additionally advised Ms. Suggs that the recovery period would last 6-8 weeks, with limited mobility that would require assistance or accommodations for normal daily activities.

13.     In response, Ms. Suggs repeatedly pressured Plaintiff to refrain from scheduling the surgical procedure.  Ms. Suggs controlled Plaintiff's work schedule, including the schedule by which Plaintiff would visit the various apartment communities owned by Defendant Gaines. Ms. Suggs, along with America's Back Office, Inc., maintained records of Plaintiff's employment and work activities, monitoring Plaintiff's work and travel schedule closely.  Given that Plaintiff's requested medical leave stood to interfere with Plaintiff's visits to the various apartment communities, Ms. Suggs asked Plaintiff to delay undergoing surgery in order to avoid business disruption.

14.     Plaintiff delayed her physician-recommended surgery from July 2015 until December 2015 at Ms. Suggs' request.  Ms. Suggs was aware of the pain Plaintiff suffered in the interim, yet recognized Plaintiff continued to fulfill all requirements of her job. Indeed, Plaintiff often worked more than sixty (60) hours per week in her employment with Gaines Investment Trust, including weekly travel. On several occasions, Plaintiff reported to Ms. Suggs by telephone while she was working during her travel.  These conference calls took place both during the day and into the night.  These late-night calls, as well as Ms. Suggs' knowledge of Plaintiffs' work performance, schedule, and work hours, made Ms. Suggs and the rest of the Defendants aware of Plaintiff's work hours in excess of forty (40) hours per week.  Plaintiff was never paid overtime for the hours she worked in excess of forty (40) hours per week during her employment with Defendants beginning May 28, 2012 and ending April 20, 2016.  The lack of payment of overtime was well known to Ms. Suggs, who approved Plaintiff's pay, and America's Back Office, Inc., which processed and issued Plaintiff's paychecks.

15.     In December 2015, Ms. Suggs again directed Plaintiff to delay the surgery in order to avoid interference with Defendant's operations.  Plaintiff complied, at that point taking

prescription pain medication up to eight times a day in order to manage the pain in her shoulder. Again, Plaintiff continued to perform all aspects of her job despite the pain management she undertook. Ms. Suggs was aware of Plaintiff's physical pain and use of pain medication as a result of delaying the surgery at Ms. Suggs' direction due to Defendants' work expectations.

16.     In March 2016, Plaintiff was treated by a new medical specialist, who determined Plaintiff's pain had worsened due to the delay in seeking a surgical remedy.   The specialist instructed Plaintiff to schedule surgery immediately, which Plaintiff scheduled for April 22, 2016.

17.     Plaintiff informed Ms. Suggs of her upcoming surgery and need for medical leave and accommodations thereafter on or about March 21, 2016.  At the time, Ms. Suggs responded by asking why Plaintiff could not just travel after surgery anyway and let the hotel concierge help Plaintiff with dressing and undressing.   Within two days later, Defendant Gaines posted an advertisement on its company website and Indeed.com, seeking applicants for Plaintiff's job title in Oklahoma and Nevada.  On or about March 25, 2016, Plaintiff inquired if she should be concerned for her job security, and Ms. Suggs assured Plaintiff she had nothing to worry about - the company was merely looking at future expansion.

18.     Plaintiff requested information from Defendant Gaines and America's Back Office, Inc. to take leave under the Family Medical Leave Act, and was told by Defendant Gaines' personnel that she did not need to complete FMLA paperwork because she had enough PTO leave accrued to cover the amount of days estimated for her FMLA leave. Defendant Gaines' personnel said Plaintiff could fill out FMLA paperwork later if needed.

19.     Soon after Plaintiff requested FMLA leave, Defendant Gaines informed Plaintiff that it was going to remove Plaintiff from the position of Senior Regional Manager, and offered

Plaintiff a demotion to a lesser position of Property Manager on April 18, 2016. This was the first time a demotion was discussed with Plaintiff, and came as a total shock to Plaintiff since her most recent performance review reflected ratings from "3 - Meets Requirements" to "5 - Substantially Exceeds Expectations", and did not reflect any ratings of "2 - Improvement Needed" or "1 – Unsatisfactory."  In fact, Plaintiff had received affirmation from Ms. Suggs regarding her work performance in the weeks immediately prior to the demotion announcement.

20.    The demotion entailed a substantial change in work responsibilities, as well as a decrease in pay of approximately thirty percent (30%).

21.    On April 19, 2016, Defendant Gaines' owner, Jeff Gaines ("Mr. Gaines"), sent Plaintiff an email on behalf of Defendant Gaines stating the only reason Defendant Gaines was removing Plaintiff from her position was to ensure the company had "the appropriate personalities in the right positions."  In the months leading to her surgery, Plaintiff was never informed of the company's intention to revise her work function or responsibilities.  Placed in the context of Plaintiff's four-year career with the company, a tenure marked by consistently positive reviews and recent affirmation from her direct supervisor, Mr. Gaines' comments did not reflect the reality of Plaintiff's job performance at her position.  Instead, Mr. Gaines' comments obviously evidenced his and the company's attempt to mask their true intentions to punish Plaintiff for finally undergoing the surgery that she had been pressured to avoid. Mr. Gaines even went so far as to surreptitiously emphasize "we are not angry, upset with you, or doing this for any other reason but to make sure we have the appropriate personalities in the right positions."  This "reason" for demoting Plaintiff from her position is a transparent cover for Defendants' unwillingness to accommodate Plaintiff's medical needs, however, since Plaintiff received the highest possible rating for "Cooperation and Attitude" on her 2015 performance

review, which stated, "*You cooperate fully and have a positive attitude at all times, under all situations. Debbie, you go above and beyond to provide assistance and reassurance to your peers and all employees. You excel at facing challenges with visualizing and expressing positive end results.*" Mr. Gaines' email advised Plaintiff to "learn to like the new role with us" and "get over any emotions you otherwise have now" and that he would be "disappointed it ended like this because your ego potentially got in the way", so Plaintiff should "give it a try and if you are not happy with it, be honest with Carmen (Ms. Suggs), and let her know it isn't working for you and we will give you the appropriate time to find another job as long as you hold up your end of the bargain and manage the property at a high level."

22.    Defendant Gaines gave Plaintiff a deadline of twenty-four (24) hours to respond to the position change.   When Plaintiff did not accept the demotion, on April 20, 2016, Defendants terminated Plaintiff from employment, mere days before Plaintiff's scheduled surgery.   America's Back Office, Inc.'s Director of Human Resources, Todd Keller, sent the letter terminating Plaintiff from Defendants' employment.   In lockstep with Defendants Gaines, Mr. Gaines, and Ms. Suggs, Mr. Keller's April 20, 2016 letter stated the following:

> "*Following a series of coaching initiatives to improve your performance, the company outlined a change in working conditions in an email from Mr. Jeff Gaines on 04/19/16. (...) In that email Mr. Gaines explained that the position offered to you was non-negotiable and that refusal to accept would essentially be considered a voluntary quit. (...) Your refusal of work leaves the company to conclude that you have accepted the terms of refusal as explained in the Gaines email of 04/19/16, which is a separation of employment due to voluntary quit for refusing terms and conditions of employment. With your terminated employment status, your FMLA inquiry is not applicable.*"

23.    Plaintiff complained of her demotion and termination to the U.S. Department of Labor.   On June 19, 2017, the Wage and Hour Division of the U.S. Department of Labor ("WHD") issued a determination that Defendant Gaines violated the FMLA by (1) interfering, restraining, or denial of leave when Plaintiff requested medical leave due to her shoulder

injury/shoulder on numerous occasions to her immediate supervisor, and (2) termination Plaintiff's employment which resulted in the denial of Plaintiff's entitlement to FMLA leave. In this determination, Plaintiff was found to be owed $49,700.37 in unpaid compensation, employment benefits, commission, and/or monetary losses suffered as a direct result of Defendant Gaines' violation as calculated by the WHD for the period beginning April 22, 2016 and ending August 26, 2016. Defendant Gaines refused to pay the amount owed to Plaintiff. During the WHD investigation, America's Back Office Director of Human Resources testified regarding Plaintiff's employment – including the amount and details of her compensation and requests for time off - on behalf of Gaines Investment Trust, evidencing the partnered employer relationship existing between the two companies towards Plaintiff.

24.     Plaintiff is informed and believes, and on that basis alleges, that in performing the actions alleged in Paragraphs 18-21 above, Defendants failed to comply with the applicable statutes and regulations, and instead, performed these actions in such a way as to discriminate against Plaintiff by reassigning her to a position entailing a significant reduction in responsibilities and compensation, attempting to constructively force her resignation.

25.     Plaintiff is informed and believes, and on that basis alleges, that as a proximate result of Defendants' above-described conduct: (1) Plaintiff's right to take reasonable leave for medical care was interfered with and impaired; (2) Defendants' reassignment of Plaintiff to a position requiring less responsibility and decreased pay was in retaliation to Plaintiff taking a leave of absence for medical reasons and violated Plaintiff's right to the same or equivalent employment upon her return from leave; and (3) Plaintiff's reassignment to a position of lesser responsibility and decreased compensation was perpetuated with the knowledge that the change

in responsibility and compensation would cause a severe hardship to Plaintiff, forcing her resignation.

26.     As a proximate cause of Defendants' conduct, Plaintiff was not compensated during her leave of absence, was unemployed for a time period following her termination, and has been forced to accept a position within the same industry for substantially less pay.  Plaintiff will continue to experience a loss of wages at an amount to which she is entitled under her previous employment with Defendants. These monetary damages are consistent with those recoverable for violation of the FMLA.

27.     Plaintiff is informed and believes, and on that basis alleges, that in failing to pay overtime compensation as alleged in Paragraph 14 above, Defendants failed to comply with the compensation requirements of the Fair Labor Standards Act of 1938, 29 U.S.C. §206, et. seq.

## V.     FIRST CLAIM FOR RELIEF

### Compensatory Damages Under the FMLA
29 U.S.C. §2617(a)

28.     Plaintiff re-alleges and incorporates by reference the factual background within Section IV herein.

29.     Defendants qualify as an "employer" as that term is defined in the FMLA, 29 U.S.C. §2611(4).  Plaintiff is an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. §2611(2).

30.     As described in Section IV above, Plaintiff's medical condition, the forced delay in her medical care, and ultimately, her scheduled surgery provided a valid "entitlement to leave," as defined in the FMLA, 29 U.S.C. §2612(a)(1)(d).  Defendants denied, prevented, and punished Plaintiff when she exercised her entitlement to leave as prescribed in the FMLA.

31.     Plaintiff was entitled to restoration of her position as described in the FMLA, 29 U.S.C. §2614(a), but Defendants denied and refused to restore Plaintiff to the same or equivalent position as prescribed in the FMLA.

32.     Defendants committed the above-described violations of the FMLA, 29 U.S.C. §2615, and are responsible under the FMLA, 29 U.S.C. §2617(a).

33.     As a result of Plaintiff's loss of employment, Plaintiff has incurred and is now incurring, a loss of wages within the meaning of the FMLA, 29 U.S.C. §2617, in an amount to be proved at trial. These costs include, without limitation, lost wages and back pay from the date of Plaintiff's termination, lost employment benefits from the date of Plaintiff's termination, the loss of front pay as of the date of this complaint, and any interest on the amount thereon as provided in the FMLA, 29 U.S.C. §2617.   Plaintiff's costs also include necessary attorneys' fees that accumulate at a reasonable rate.

34.     Further, Defendants are liable to Plaintiff for the costs described in the preceding paragraph.

35.     Since Defendants' violations of the FMLA were willful and were not made in good faith as Defendants had no reasonable ground to believe their actions were not a violation, Plaintiff is entitled to punitive damages at least in an amount equal to her actual damages as allowed plus interest. 29 U.S.C. §2617(a).

## VI.     <u>SECOND CLAIM FOR RELIEF</u>

<u>Declaratory Relief for Compensatory Damages Under the FMLA</u>
29 U.S.C. §2617(a)

36.     Plaintiff realleges and incorporates by reference each and every allegation contained in Sections IV and V herein.

37.     An actual controversy now exists between Plaintiff and Defendants, in that Plaintiff contends that Defendants are liable under the FMLA, 29 U.S.C. §2617, for all lost wages, benefits, and costs to be incurred by Plaintiff in connection with the alleged employment discrimination perpetrated by Defendants.  Plaintiff is informed and believes, and on that basis alleges, that Defendants contend in all respects to the contrary.

38.     A declaration of the rights and obligations of the parties, pursuant to the FMLA, 29 U.S.C. §2617(a), binding in any subsequent action or actions to recover further costs incurred by Plaintiff, is appropriate and in the interests of justice.

## VII.   THIRD CLAIM FOR RELIEF

### Compensatory Damages Under the FLSA
### 29 U.S.C. §216(a)

39.     During the relevant period, Defendants violated the provisions of Section 7 of the FLSA and Section 215(a)(2) by employing Plaintiff, an employee(s) engaged in commerce within the meaning of the FLSA, for work weeks longer than forty (40) hours without compensating Plaintiff for her work in excess of forty hours per week at rates no less than one-and-a-half times the regular rates for which she was employed. Defendants knew Plaintiff worked in excess of forty hours a week, and therefore acted willfully in failing to pay Plaintiff in accordance with the law.

## VIII.   <u>PRAYER</u>

WHEREFORE, Plaintiff Deborah Christensen prays for judgment against Defendants as follows:

<u>AS TO THE FIRST CLAIM FOR RELIEF</u><br><u>FOR COMPENSATORY DAMAGES UNDER THE FMLA</u>

1.      For an Order awarding Plaintiff compensatory damages and other costs incurred by her according to proof, but believed to exceed $200,000.00;

<u>AS TO THE SECOND CLAIM FOR RELIEF</u><br><u>FOR DECLARATORY RELIEF UNDER THE FMLA</u>

2.      For a judicial declaration that Defendants are liable under the FMLA, 29 U.S.C. §2617(a), for all past, present and future lost wages, employment benefits, and other costs incurred by Plaintiff in connection with Plaintiff's termination of employment by Defendants, including, without limitation, reasonable attorneys' fees;

<u>AS TO THE THIRD CLAIM FOR RELIEF FOR COMPENSATORY DAMAGES UNDER</u><br><u>THE FLSA</u>

3.      For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiff and for liquidated damages in an amount equal to the unpaid compensation found due to Plaintiff for up to three years prior to the date of this complaint;

<u>AS TO ALL CLAIMS</u>

4.      For reasonable attorneys' fees and costs of suit herein;

5.      For an Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

6.      For an Order granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Court D. Smith
Court D. Smith
Texas State Bar No. 24008049
**PLUNK SMITH, PLLC**
1701 Legacy Drive, Suite 2000
Frisco, Texas 75034
Telephone: (972) 370-33333
Facsimile: (972) 294-5274
E-mail: csmith@plunksmith.com
**ATTORNEY FOR PLAINTIFF**

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff hereby demands trial by jury for the claims set forth in her complaint.

Dated November 21, 2017.

By: /s/ Court D. Smith
Court D. Smith
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

On January 14, 2018, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the Court's Case Management/Electronic Case Filing (CM/ECF) System.   I certify that I have served all counsel of record electronically in accordance with the Federal Rules of Civil Procedure or local rules of this Court.

Jeremy W. Hawpe
Kathryn Blakey
LITTLER MENDELSON, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, Texas 75201-2931
JHawpe@littler.com
*Attorneys for Defendants Gaines Investment Trust, Jeffrey Gaines and Carmen Suggs*

/s/ Court D. Smith
Court D. Smith